UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| BUCKEYE PARTNERS, L.P., CLARK C. SMITH, PIETER BAKKER, BARBARA M. BAUMANN, BARBARA J. DUGANIER, JOSEPH A. LASALA, JR., MARK C. MCKINLEY, LARRY C. PAYNE, OLIVER G. RICHARD, III, FRANKS S. SOWINSKI, and MARTIN A. WHITE, | ) CLASS ACTION ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 10, 2019 (the "Proposed Transaction"), pursuant to which Buckeye Partners, L.P. ("Buckeye" or the "Partnership") will be acquired by IFM Global Infrastructure Fund and its affiliates.

2. On May 10, 2019, the Board of Directors (the "Board" or "Individual Defendants") of Buckeye's general partner, Buckeye GP LLC (the "General Partner"), caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement") with Hercules Intermediate Holdings LLC ("Parent"), Hercules Merger Sub LLC ("Merger Sub"), Buckeye Pipe Line Services Company ("ServiceCo"), and the General Partner. Pursuant to the terms of the Merger Agreement,

Buckeye's unitholders will receive $41.50 in cash for each Buckeye common unit they own.

3. On June 7, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either an entity that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Buckeye common units.

9. Defendant Buckeye is a Delaware limited partnership and maintains its principal executive offices at One Greenway Plaza, Suite 600, Houston, Texas 77046. Buckeye's common

units are traded on the New York Stock Exchange under the ticker symbol "BPL."

10. Defendant Clark C. Smith is Chief Executive Officer, President, and Chairman of the Board of the General Partner.

11. Defendant Pieter Bakker is a director of the General Partner.

12. Defendant Barbara M. Baumann is a director of the General Partner.

13. Defendant Barbara J. Duganier is a director of the General Partner.

14. Defendant Joseph A. LaSala, Jr. is a director of the General Partner.

15. Defendant Mark C. McKinley is a director of the General Partner.

16. Defendant Larry C. Payne is a director of the General Partner.

17. Defendant Oliver G. Richard, III is a director of the General Partner.

18. Defendant Franks S. Sowinski is a director of the General Partner.

19. Defendant Martin A. White is a director of the General Partner.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public unitholders of Buckeye (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of May 7, 2019, there were approximately 153,918,086 common units of Buckeye outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others, whether defendants violated the 1934 Act and whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Partnership and the Proposed Transaction*

28. Buckeye is a master limited partnership that owns and operates a diversified global network of integrated assets providing midstream logistic solutions, primarily consisting of the transportation, storage, processing, and marketing of liquid petroleum products.

29. The Partnership is one of the largest independent liquid petroleum products pipeline operators in the United States in terms of volumes delivered, with approximately 6,000 miles of

pipeline.

30. The Partnership also operates and/or maintains third-party pipelines and terminals and performs certain engineering and construction services for its customers.

31. The Partnership's global terminal network comprises more than 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels across its portfolio of pipelines, inland terminals, and marine terminals located primarily in the East Coast, Midwest, and Gulf Coast.

32. On March 10, 2019, the Board caused the Partnership to enter into the Merger Agreement.

33. Pursuant to the terms of the Merger Agreement, Buckeye's unitholders will receive $41.50 in cash for each Buckeye common unit they own.

34. According to the press release announcing the Proposed Transaction:

> IFM Investors and Buckeye Partners, L.P. (NYSE: BPL) today announced a definitive agreement ("Agreement") under which the IFM Global Infrastructure Fund will acquire all of the outstanding public common units of Buckeye for $41.50 per common unit. The all-cash transaction is valued at $10.3 billion enterprise value and $6.5 billion equity value. The acquisition price represents a 27.5% premium to Buckeye's closing unit price on May 9, 2019 and a 31.9% premium to Buckeye's volume-weighted average unit price since November 1, 2018, which is the last trading day prior to Buckeye's announcement of certain strategic actions. Buckeye's Board of Directors unanimously approved the proposed transaction with IFM. The closing of the merger will be subject to approval of a majority of the Buckeye unitholders, certain regulatory approvals and other customary closing conditions.
>
> Buckeye owns and operates one of the largest diversified networks of integrated midstream assets, including 6,000 miles of pipeline with over 100 delivery locations and 115 liquid petroleum products terminals with aggregate tank capacity of over 118 million barrels. Its network of marine terminals is located primarily in the East Coast and Gulf Coast regions of the United States, as well as in the Caribbean. . . .
>
> Closing of the transaction is expected to occur in the fourth quarter of 2019 and is subject to customary closing conditions. Pending transaction close, the companies

will continue to operate independently.

Evercore Group LLC is acting as lead financial advisor to IFM, and Credit Suisse, Goldman, Sachs & Co. LLC and BofA Merrill Lynch are acting as financial advisors to IFM. White & Case LLP and Baker Botts LLP are acting as legal advisors to IFM. Intrepid Partners, LLC and Wells Fargo Securities, LLC are acting as financial advisors and Cravath, Swaine & Moore LLP is acting as legal advisor to Buckeye.

35.  The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 5.02(a) the Merger Agreement provides:

> The Partnership shall, and shall cause each of its Subsidiaries (including the General Partner) to, immediately cease and cause to be terminated any discussions or negotiations with any Person heretofore conducted with respect to any Takeover Proposal, request the return or destruction of all confidential information previously provided to such Person by or on behalf of the Partnership or its Subsidiaries and immediately prohibit any access by any such Person to any physical or electronic data room relating to a possible Takeover Proposal. Except as permitted by this Section 5.02, the Partnership shall and shall cause each of its Subsidiaries (including the General Partner) to, and shall use its reasonable best efforts to cause its and its Subsidiaries' Representatives to, not, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate (including by way of furnishing non-public information) the submission of any inquiries regarding, or the making or submission of any proposal or offer that constitutes, or would reasonably be expected to lead to, a Takeover Proposal, (ii) engage in, continue or otherwise participate in any discussions or negotiations regarding (except to notify any Person of the provisions of this Section 5.02), or furnish to any other Person any non-public information in connection with, or for the purpose of encouraging, any inquiry, proposal or offer that constitutes, or would reasonably be expected to lead to, a Takeover Proposal or (iii) execute or enter into any letter of intent, memorandum of understanding, agreement in principle, confidentiality agreement, merger agreement, acquisition agreement, exchange agreement, joint venture agreement, partnership agreement, collaboration agreement, option agreement or other similar agreement providing for, relating to, or in connection with, a Takeover Proposal.

36.  Additionally, the Partnership must promptly advise Parent of any proposals or inquiries received from other parties. Section 5.02(c) of the Merger Agreement states:

6

> The Partnership shall promptly (and in any event within 24 hours) notify Parent in writing in the event that any Takeover Proposal or any inquiry, proposal or offer that would reasonably be expected to lead to a Takeover Proposal is received by the Partnership or any of its Subsidiaries or its or their Representatives and shall disclose to Parent the material terms and conditions of any such Takeover Proposal, inquiry, proposal or offer and the identity of the Person or group of Persons making such Takeover Proposal, inquiry, proposal or offer (and shall include with such notice unredacted copies of such Takeover Proposal and copies of any other documents evidencing or specifying the terms and conditions of such Takeover Proposal or, if not in writing, a written description of the material terms and conditions of such Takeover Proposal), and the Partnership shall promptly (and in any event within 24 hours) keep Parent reasonably informed of any material developments with respect to any such Takeover Proposal, inquiry, proposal or offer (including copies of any additional written materials received by the Partnership, its Subsidiaries or their respective Representatives). For the avoidance of doubt, all information provided to Parent pursuant to this Section 5.02(c) will be subject to the terms of the Confidentiality Agreement.

37. Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Parent a "matching right" with respect to any "Superior Proposal" made to the Partnership. Section 5.02(e) of the Merger Agreement provides:

> Notwithstanding any other provision of this Agreement to the contrary, prior to, but not after, obtaining the Partnership Unitholder Approval, the Partnership Board or any committee thereof may, in response to a Takeover Proposal not solicited in violation of this Section 5.02 and that has been made and not withdrawn, (i) make an Adverse Recommendation Change or (ii) cause the Partnership to enter into a Partnership Acquisition Agreement with respect to such Takeover Proposal and terminate this Agreement pursuant to Section 7.01(d)(ii), in either case, if the Partnership Board or any committee thereof has determined in good faith, (A) after consultation with its outside legal counsel, that the failure to take such action would be inconsistent with the Partnership Board's or the applicable committee's contractual obligations under the Partnership Agreement or obligations under applicable Law that are applicable to the Partnership Board or the applicable committee, to the extent not waived or otherwise modified or eliminated and (B) after consultation with its financial advisors and outside legal counsel, that such Takeover Proposal constitutes a Superior Proposal; provided, however, that the Partnership Board or any committee thereof shall not, and shall cause the Partnership not to, take any action set forth in clause (i) or clause (ii), unless (1) the Partnership has given Parent at least four business days' prior written notice of its intention to take such action (which notice shall specify the identity of the party making such Superior Proposal and the material terms and conditions thereof

(including the per Partnership Unit value of the consideration offered therein), and shall include an unredacted copy of the proposed Partnership Acquisition Agreement (if any) with the Person making such Superior Proposal and unredacted copies of any other material documents evidencing or specifying the terms and conditions of such Superior Proposal (the four business days following such written notice, the "Superior Proposal Match Period"), (2) the Partnership has negotiated, and has caused its Representatives to negotiate, in good faith with Parent during the Superior Proposal Match Period, to the extent Parent wishes to negotiate, to enable Parent to propose revisions to the terms of this Agreement, the Financing Letters (or either of them) and the Limited Guarantee, as applicable, such that it would cause such Takeover Proposal to no longer constitute a Superior Proposal, and (3) following the end of the Superior Proposal Match Period, the Partnership Board or any committee thereof shall have considered in good faith such revised terms, and shall have determined (x) after consultation with its financial advisors and outside legal counsel, that such Takeover Proposal would continue to constitute a Superior Proposal if the revisions proposed by Parent in such revised terms were to be given effect and (y) after consultation with its outside legal counsel, that the failure to take such action would be inconsistent with the Partnership Board's or the applicable committee's contractual obligations under the Partnership Agreement or obligations under applicable Law that are applicable to the Partnership Board or the applicable committee, to the extent not waived or otherwise modified or eliminated (it being understood and agreed that any amendment to the financial terms or any other material term of such Superior Proposal shall require a new notice and a new Superior Proposal Match Period, which Superior Proposal Match Period shall be three business days with respect to any such amendment).

38. The Merger Agreement also provides for a "termination fee" of $130 million payable by the Partnership to Parent if the Individual Defendants cause the Partnership to terminate the Merger Agreement.

***The Proxy Statement Omits Material Information***

39. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which recommends that the Partnership's unitholders vote to approve the Proposed Transaction.

40. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

41. First, the Proxy Statement omits material information regarding the Partnership's financial projections.

42. The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate Adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

43. The disclosure of projected financial information is material because it provides unitholders with a basis to project the future financial performance of a partnership, and allows unitholders to better understand the financial analyses performed by the partnership's financial advisor in support of its fairness opinion.

44. Second, the Proxy Statement omits material information regarding the analyses performed by the Partnership's financial advisor in connection with the Proposed Transaction, Wells Fargo Securities, LLC ("Wells Fargo").

45. With respect to Wells Fargo's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose the individual inputs and assumptions underlying the perpetuity growth rates ranging from 1.00% to 2.00% and the discount rates ranging from 7.84% to 8.34%.

46. With respect to Wells Fargo's Discounted Distributions Analysis, the Proxy Statement fails to disclose: (i) the terminal values used by Wells Fargo in the analysis; and (ii) the individual inputs and assumptions underlying the perpetuity growth rates ranging from 0.00% to 2.00% and the costs of equity ranging from 9.80% to 10.30%.

47. When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

48. Third, the Proxy Statement fails to disclose the terms of the engagement of the Company's additional financial advisor in connection with the Proposed Transaction, Intrepid

Partners, LLC ("Intrepid").  Among other things, the Proxy Statement fails to disclose the amount of compensation Intrepid will receive in connection with its engagement, as well as the amount of Intrepid's compensation that is contingent upon consummation of the Proposed Transaction.  Further, the Proxy Statement fails to disclose whether Intrepid has performed past services for any parties to the Merger Agreement or their affiliates, as well as the timing and nature of such services and the amount of compensation received by Intrepid for such services.

49. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

50. The omission of the material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement:  (i) Background of the Merger; (ii) Recommendation of the Board; (iii) Reasons for the Merger; (iv) Opinion of the Partnership's Financial Advisor; and (v) Financial Forecasts.

51. The omitted information, if disclosed, would significantly alter the total mix of information available to the Partnership's unitholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and the Partnership**

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  The Partnership is liable as the issuer of these statements.

54. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

55. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to unitholders.

57. The Proxy Statement is an essential link in causing plaintiff and the Partnership's unitholders to approve the Proposed Transaction.

58. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of the Partnership within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and

did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

64. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: June 18, 2019

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

13